## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

JAMES F. LEWIS,

      Plaintiff,

v.                                         Case No: 5:22-cv-650-JA-PRL

KEITH REYES, KARL MARKLUND,
GREGG DUDLEY and LAKE
COUNTY FLORIDA SCHOOL
DISTRICT,

      Defendants.

_____

### REPORT AND RECOMMENDATION[1]

      Merely because a building or property is public doesn't mean that a citizen can have access to it for any reason and at any time. Certainly, a person couldn't demand entry to a court closed on the weekend or in the middle of the night. In the same way, the Plaintiff couldn't demand access to the local elementary school gymnasium merely because he wanted to play basketball. Yet, here, that is effectively Plaintiff's theory. Plaintiff believes, "if a school is a public school, I have a right to be there." The law, however, doesn't provide for that. To the contrary, Florida law provides for school officials, such as a school principal, to be able to control who has access to the campus of a public school. Florida law specifically prohibits any person without legitimate business on the campus from entering or remaining on school property, and empowers the principal of a public school, or his or her designee, to direct them

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. See Fed. R. Civ. P. 72(b)(3); Fed. R. Crim. P. 59(b)(2); 28 U.S.C. § 636(b)(1)(B). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1.

to leave. Fla. Stat. § 810.097. Violation of these provisions constitutes trespass upon the grounds of a school facility and is first degree misdemeanor. Fla. Stat. § 810.097.

This case arises out of an encounter at The Villages Elementary School in Lady Lake, Florida, involving a school principal overseeing dismissal of students at the end of the school day, law enforcement officers, and Plaintiff James Lewis, a self-proclaimed "citizen journalist" who was intent upon videotaping activity near the school, monitoring the work performance of public employees, and gaining access to the campus. Not surprisingly, a confrontation ensued and ended with Plaintiff being arrested at the request of the school principal for Trespassing Upon Grounds of a Public School Facility in violation of Fla. Stat. § 810.097. Plaintiff contends that the arrest was unlawful and violated his constitutional rights. Plaintiff is wrong.

Upon referral, this matter is before me for consideration of motions to dismiss filed on behalf of each of the defendants, including Sergeant Keith Reyes and Officer Karl Marklund[2] of the Lady Lake Police Department; Gregg Dudley, principal of The Villages Elementary School; and the Lake County Florida School District. (Docs. 12, 13 & 15). Plaintiff has filed responses in opposition to the motions to dismiss. (Docs. 19, 20, 22 & 26). Upon due consideration and for the reasons explained below, I find that Plaintiff's claims are entirely without merit and recommend that they be dismissed.

Defendants have also filed a motion requesting that the Court take judicial notice of documents from a related state court proceeding, and Plaintiff has filed a response in opposition. (Docs. 11 & 20). Upon consideration, and because the motions to dismiss are due

---

[2] Although Plaintiff has used a variety of spellings, Defendants note that the correct spelling of Officer Karl Marklund's name is "Marklund." (Doc. 15 at 1 n.1).

to be granted irrespective of the issue of judicial notice, Defendants' motion for judicial notice (Doc. 11) is due to be denied without prejudice as moot.

## I.   BACKGROUND

This case arises from an incident that occurred at and near The Villages Elementary School in Lady Lake on May 13, 2021. It appears that Plaintiff had a grievance with the traffic caused when students were released at the end of the school day at The Villages Elementary School.

### A. PLAINTIFF'S ALLEGATIONS[3]

According to Plaintiff's complaint, he intended to video record and protest heavy traffic congestion and "view the public officials' work performances while school was in the dismissal process." (Doc. 1-1 at 2). Initially, Plaintiff was walking and standing on the public sidewalk "just outside the school" and recording traffic using his cell phone. (Doc. 1-1 at 2). Eventually, Plaintiff was approached by Gregg Dudley, the school principal, who asked "if he could help [plaintiff]." (Doc. 1-1 at 2). Sgt. Keith Reyes of the Lady Lake Police Department was also present. He asked Plaintiff what his purpose was, and Plaintiff replied that he is "a citizen journalist engaged in Constitutionally protected activities." (Doc. 1-1 at 3).

Plaintiff alleges that he informed Dudley he would be back the next day to do a public records request. Dudley replied that all public records requests must be made at the Lake County School District Office in Tavares. Plaintiff informed Dudley that the records requested were "at this school location," and Dudley was "adamant" that the request must

---

[3] These background facts are taken directly from Plaintiff's complaint (Doc. 1) and are taken as true for purposes of these motions to dismiss.

be made at the District Office in Tavares.

Plaintiff contends that Dudley then stood at the entrance and exit of the dismissal traffic area. Soon thereafter, Plaintiff "enter[ed] the public area of campus." (Doc. 1-1 at 3). Dudley questioned Plaintiff about his intentions, and Plaintiff replied that he was "there to do a Public Records Request for the Material Safety Data Sheets (MSDS) at the school." (Doc. 1-1 at 3). Dudley repeated that public records requests must be made in the District Office in Tavares.[4] Plaintiff contends that he was "unlawfully bullied and intimidated by Dudley and Reyes while engaging in Constitutionally protected activities resulting in Plaintiff being unlawfully trespassed from public property." (Doc. 1-2 at 4).

Plaintiff further alleges he was "informed that he [was] being trespassed." Reyes asked Plaintiff for identification, but Plaintiff refused. Reyes warned him that he would be charged with trespassing. Reyes continued to request Plaintiff's name and told him that Dudley wanted him "trespassed" because he had been on school property. Plaintiff contends that Reyes told him to go back on school property and he would be arrested for trespassing.

Plaintiff then observed Reyes conferring with an officer who was later identified as the Deputy Chief of the Lady Lake Police Department. Meanwhile, Plaintiff "inform[ed] Dudley who is still standing on the public easement opposite across the road from the school that [he] would see him tomorrow." (Doc. 1-1 at 5). Plaintiff also reminded Dudley of his public records request. Plaintiff then left the "designated school zone." (Doc. 1-1 at 5).

A few minutes later, Reyes pulled up in his police car, ordered Plaintiff to put his hands behind his back, and then handcuffed Plaintiff. Reyes informed him that he was under arrest

---

[4] Plaintiff's complaint contains other allegations regarding the alleged validity of his public records request, such as that Dudley is the custodian of records at the school. Those allegations are only marginally relevant to the motions currently before the Court.

for trespassing. (Doc. 1-2 at 5). A few seconds later, Plaintiff told Reyes that the handcuffs were too tight. Reyes replied, "I don't care," and insisted "they're ok, they're ok." (Doc. 1-1 at 5). Plaintiff was transported the Lake County Jail by Officer Karl Marklund. Plaintiff alleges that he informed Officer Marklund seven times that the handcuffs were "painfully tight," but that the officer did nothing to alleviate the pain. (Doc. 1-1 at 6).

## B. Video Footage

Plaintiff has also filed a video containing footage filmed by him on the day of the incident. Generally, a court may consider documents and exhibits attached to the complaint where those attachments are undisputed in their authenticity and central to the claims.[5] *See Arthur v. Thomas*, 674 F.3d 1257, 1265 (11th Cir. 2012) (collecting cases); *see also Ferguson v. Dunn*, No. 1:16-v-00272, 2018 WL 2656990, *1 n.1 (E.D. Tex. Apr. 27, 2018) (video disc attached to complaint considered part of plaintiff's pleadings).

Upon review, the Court finds the video footage generally consistent with the allegations of the complaint, with the important caveat that the video depicts far more detail than described in the complaint. For example, the video depicts events leading up to the incident, including Plaintiff confronting a police officer directing traffic at the school about whether the use of his emergency lights was proper, Plaintiff conspicuously filming cars in the school's carline, Plaintiff confronting parents in the car pickup line, Plaintiff being confronted by parents who believed or were concerned that he was filming their children, and Plaintiff

---

[5] It seems that Defendants may not be aware that Plaintiff filed the video footage and that it is part of the record in this case. In Reyes and Marklund's motion to dismiss, they note that "[i]t appears Plaintiff may have tried to file the videotape with the Court, but the docket does not reflect that it was." (Doc. 15 at 4 n.2) The docket reflects, however, that the video footage was filed together with Plaintiff's complaint. The docket entry states, "CD of video filed separately." (Doc. 1). Plaintiff also clearly references the video and its content throughout his compliant. As explained herein, the undersigned has considered the video footage filed by Plaintiff.

exchanging words with law enforcement, Principal Dudley, and others.[6]

Most notably, the video plainly depicts Plaintiff entering school property and engaging in an exchange with both Principal Dudley and Sgt. Reyes. During that exchange, Principal Dudley repeatedly directed Plaintiff to the District Office to make public records requests. Following that instruction, Plaintiff remained on campus. Meanwhile, Dudley asked him to leave more than <u>eight</u> times. Throughout the incident, Plaintiff's demeanor was confrontational and belligerent. Despite being asked to state his business, Plaintiff did not appear to have a legitimate basis for being on school property beyond his purported desire to make a public records request regarding Material Safety Data Sheets. Indeed, as the entirety of the video footage reveals, it appears that reason was little more than a guise for Plaintiff to attempt to gain access to school property as part of his further attempt to play "gotcha" with school officials regarding policy matters.

### C. CLAIMS ALLEGED

Plaintiff's complaint alleges the following claims: Count I - arrest without probable cause under 42 U.S.C. § 1983 against Principal Gregg Dudley; Count II - false arrest/arrest without probable cause/false imprisonment, fabricating evidence and excessive force under § 1983 against Sgt. Reyes and Officer Marklund; Count III - failure to train or supervise Principal Gregg Dudley of his duties as records custodian resulting in an unconstitutional official policy enacted toward Plaintiff in violation of § 1983 against the Lake County School District; and Count IV – First Amendment Retaliation against all Defendants. Plaintiff seeks

---

[6] The entirety of the video footage provides context for Plaintiff's claims; however, the interactions between Plaintiff, Sgt. Reyes, and Principal Dudley begin escalating around 21:00 on the video and escalate further at 27:00. Plaintiff can be plainly seen entering school property at 28:45, and immediately asking "Hey, this is public property, right?" to which Sgt. Reyes immediately replies, "No, no, no, no, this is school property." The most relevant portion of the video follows immediately thereafter and depicts Dudley repeatedly requesting that Plaintiff leave the school property.

at least $200,000 in compensatory damages and at least $1.5 million in punitive damages.

## II.   LEGAL STANDARD

The bare minimum a plaintiff must set forth in his complaint is found in Fed. R. Civ. P. 8. Under Rule 8, "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The United States Supreme Court has explained, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), that while particularity is not required under Fed. R. Civ. P. 8, as it is under Fed. R. Civ. P. 9, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Instead, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). In short, to survive a motion to dismiss a plaintiff must allege something more "than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555).

The Eleventh Circuit utilizes a two-pronged approach in its application of the holdings in *Iqbal* and *Twombly*. First, the court will "eliminate any allegations in the complaint that are

merely legal conclusions." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010). Then, "where there are well-pleaded factual allegations," the court will "'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

In applying this two-step approach to determine the complaint's sufficiency under Rule 8 (and in turn the plausibility of the claims), the Eleventh Circuit limits its "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). Further, the Court can infer "'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n*, 605 F.3d at 1290 (quoting *Iqbal*, 556 U.S. at 682) (brackets omitted). Finally, a complaint is also subject to dismissal under Rule 12(b)(6) "when its allegations on their fact, show that an affirmative defense bars recovery on the claim." *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003).

## III.   DISCUSSION

The Court will first address the Defendants' motions to dismiss, and then will address the motion for judicial notice.

### A. ARREST WITHOUT PROBABLE CAUSE AGAINST REYES, MARKLUND, AND DUDLEY

The Court begins with the Constitutional claims alleged under 42 U.S.C. § 1983. Any person who, under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party

injured in an action at law." 42 U.S.C. § 1983. A plaintiff may recover for a violation of his constitutional rights pursuant to § 1983 under a theory of individual liability or governmental liability. It is well established that government agents are "shielded from liability for civil damages if their actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Here, Defendants argue that no constitutional violations occurred. Indeed, when considering a plaintiff's claims, "[t]he threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, established a constitutional violation." *Hope*, 536 U.S. at 736. Further, to establish personal liability against a government agent for a constitutional wrong the facts alleged by Plaintiff must contain sufficient allegations to show that the individual *personally participated* in the alleged constitutional violation. *See, e.g.*, *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003).

Under § 1983, Plaintiff asserts claims for arrest without probable cause in Count I against Principal Dudley[7] and in Count II against Sgt. Reyes and Officer Marklund. Claims alleging arrest without probable cause generally require a showing of "(1) the unlawful detention and deprivation of liberty of a person; (2) against that person's will; (3) without legal authority or 'color of authority'; and (4) which is unreasonable and unwarranted under the circumstances." *Mbano v. Kriseman*, No. 8:14-CV-1923-T-30TBM, 2014 WL 5782802, at *4 (M.D. Fla. Nov. 6, 2014). In other words, a "warrantless arrest without probable cause

---

[7] Plaintiff alleges that he was arrested without probable cause due to Principal Dudley's "escalated arbitrary and capricious actions." (Doc. 1-2 at 7). Plaintiff does not allege that Dudley arrested him, but rather that he was arrested at Dudley's request. Because the Court finds below that there was both actual and arguable probable cause for the arrest, the Court need not examine whether the extent of Dudley's personal participation in the arrest is sufficient to support liability under § 1983.

violates the Fourth Amendment and is actionable under 42 U.S.C. § 1983." *Ainsworth v. Norris*, 469 F. App'x 775, 776 (11th Cir. 2012).

Importantly, in a § 1983 claim based on false arrest, the pertinent inquiry is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense. *See generally Rankin v. Evans*, 133 F.3d 1425, 1435-36 (11th Cir. 1998); *Marx v. Gumbinner*, 905 F.2d 1503 (11th Cir. 1990). For probable cause to exist, "an arrest must be objectively reasonable under the totality of circumstances." *Bailey v. Board of County Comm'rs of Alachua County*, 956 F.2d 1112, 1119 (11th Cir.) *cert. denied*, 506 U.S. 832 (1992); *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004) ("Probable cause to arrest exists when an arrest is objectively reasonable based on the totality of the circumstances."). This standard is met when the facts and circumstances within the officer's knowledge, of which he has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that a suspect had committed, is committing, or is about to commit an offense. *Williamson v. Mills*, 65 F.3d 155, 158 (11th Cir. 1995).

Plaintiff's own factual allegations in the complaint belie his conclusory assertion that Defendants Dudley, Reyes, and Marklund arrested him (or had him arrested) for trespass under Fla. Stat. § 810.097 without probable cause. According to his own written allegations, Plaintiff concedes that he was openly filming activity during dismissal at the school, and that he was doing so from the public sidewalk nearby. He also concedes that he entered school property and had an exchange with Principal Dudley regarding the public records request. Plaintiff alleges that he and Dudley engaged in an exchange or dispute regarding Plaintiff's desire to make a records request at the school and the propriety of his attempt to do so at the

school versus the District Office. His own allegations make it plain that Plaintiff was acting in a confrontational manner, that he argued with both Principal Dudley and Sgt. Reyes, and that he disputed Dudley's direction to make a request at the District Office. Plaintiff admits entering the school campus about four minutes after being clearly informed by Dudley that public records requests needed to be made at the District Office. In other words, even if he initially believed in good faith that he had legitimate business on the campus, Dudley's instructions clarified otherwise. Even after he was also warned by Sgt. Reyes, Plaintiff continued to engage with Dudley. Plaintiff contends that he told Dudley, "I would see him tomorrow," and mentioned the public records request again.

Moreover, the video footage plainly establishes that Plaintiff was on school property and that he remained on school property after being informed numerous times that his public records request should be made elsewhere. Importantly, Principal Dudley asked him to leave more than <u>eight</u> times during that exchange alone. In other words, both Plaintiff's own allegations and his supporting video exhibit establish that the officers had an objectively reasonable basis for his arrest under Fla. Stat. § 810.097(1) and (2).[8] Regardless of which

---

[8] Fla. Stat. § 810.097 provides, in part:
Trespass upon grounds or facilities of a school; penalties; arrest.—
(1)   Any person who:
    (a)   Does not have legitimate business on the campus or any other authorization, license, or invitation to enter or remain upon school property; or
    (b)   Is a student currently under suspension or expulsion;
and who enters or remains upon the campus or any other facility owned by any such school commits a trespass upon the grounds of a school facility and is guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083.
(2)   Any person who enters or remains upon the campus or other facility of a school after the principal of such school, or his or her designee, has directed such person to leave such campus or facility or not to enter upon the campus or facility, commits a trespass upon the grounds of a school facility and is guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083.
Fla. Stat. § 810.097.

subsection of the statute is applied, probable cause exists for the arrest.

Further, even if there was not actual probable cause, I submit that the arresting officers had arguable probable cause, which is "all that is required for qualified immunity to be applicable to an arresting officer." *Scarbrough v. Myles*, 245 F.3d 1299, 1302 (11th Cir. 2001). Arguable probable cause exists "where reasonable officers in the same circumstances and possessing the same knowledge as the Defendant[] could have believed that probable cause existed to arrest." *Id.* (quoting *Redd v. City of Enterprise*, 140 F.3d 1378, 1382 (11th Cir. 1998) (internal citations omitted)). "Arguable probable cause does not require an arresting officer to prove every element of a crime or to obtain a confession before making an arrest, which would negate the concept of probable cause and transform arresting officers into prosecutors." *Scarbrough*, 245 F.3d at 1302–03.

Based on the same reasons described above establishing that the officers had an objectively reasonable basis for the arrest, I also submit that the officers had arguable probable cause and would therefore be entitled to qualified immunity. For these reasons, Plaintiff's claims against Principal Dudley in Count I and against Sgt. Reyes and Officer Marklund in Count II for unlawful arrest or arrest without probable cause should be dismissed.

## B.  EXCESSIVE FORCE AGAINST REYES AND MARKLUND

Next, the Court turns to the claims for excessive force alleged in Count II against Sgt. Reyes and Officer Marklund. Under the Fourth Amendment, the "freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002). To determine whether excessive force was used, the court considers whether the actions in question "are 'objectively reasonable' in light of the facts and circumstances." *Garrett v.*

*Athens–Clarke County*, 378 F.3d 1274, 1279 (11th Cir. 2004) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)).

Fourth Amendment jurisprudence recognizes that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396. As a result, "the application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." *Myers v. Bowman*, 713 F.3d 1319, 1327 (11th Cir. 2013) (citation omitted); *see, e.g., Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002) (in the course of arrest, officer handcuffed plaintiff in a manner that caused him injury and pain); *Nolin v. Isbell*, 207 F.3d 1253, 1255, 1258 n.4 (11th Cir. 2000) (during the course of arrest, officer grabbed plaintiff and shoved him against a van, kneed him in the back and pushed his head against the van, searched his groin area, and then handcuffed him).

The Supreme Court has established factors for courts to evaluate in considering claims of excessive force. The factors include: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether he is actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396.

Here, the extent of force alleged by Plaintiff is that the handcuffs were too tight and that his complaints and requests to loosen them were ignored. Even if the Court accepts these allegations as true, they are not sufficient to support a claim for excessive force in violation of the Fourth Amendment. Considering the relevant factors and Plaintiff's allegations, at best Sgt. Reyes and Officer Marklund used what can be described as "de minimus" force.

Indeed, courts require considerably more than has been alleged here to support a claim for excessive force. For example, in *Lockhart v. Lebron*, No. 19-CV-60326, 2019 WL 1996016,

at *4 (S.D. Fla. Apr. 17, 2019), *report and recommendation adopted as modified*, No. 19-CV-60326, 2019 WL 1992993 (S.D. Fla. May 6, 2019), the court considered allegations more serious than those brought here, including that the plaintiff was placed in chokehold and forced to the ground, causing injury. *Id.* Concluding that the force used was de minimus, the court reasoned:

> [T]hese actions are not necessarily uncommon nor excessive. While the Plaintiff did not resist arrest, in the Eleventh Circuit, we recognize that the typical arrest involves some force and injury." *See Nolin v. Isbell*, 207 F.3d 1253, 1257–58 (11th Cir. 2000). "Painful handcuffing, without more, is not excessive force in cases where the resulting injuries are minimal." *Rodriguez v. Farrell*, 280 F,3d 1341, 1352 (11th Cir. 2002). Once handcuffed, the Plaintiff does not allege that any excessive force was used; rather, he alleged that he was simply placed in the patrol car and transported to jail.

*Id.* at *4.

Consideration of the relevant factors together with the facts and circumstances presented here results in the conclusion that the use of force was reasonable or, as the *Lockhart* court concluded, de minimus. Therefore, even if the allegations of Plaintiff's complaint are accepted as true, the Plaintiff still has not stated a claim for violation of the Fourth Amendment upon which relief may be granted.[9]

## C. QUALIFIED IMMUNITY FOR ALL INDIVIDUAL DEFENDANTS

Moreover, as to the claims alleged against the individual defendants, the Court expressly notes that the defendants are entitled to qualified immunity. Qualified immunity offers complete protection for individual government officials performing discretionary

---

[9] The Court notes that Plaintiff's complaint appears to allege claims for excessive force against both Sgt. Reyes and Officer Marklund, although they were each responsible for distinct actions. Because the complaint falls well short of stating a claim for excessive force against either of them, it is not necessary to parse out precisely which allegations pertain to each officer.

functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818.

Assuming for purposes of this analysis that the individual defendants were engaged in a discretionary function, "the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004). To satisfy this burden, the plaintiff must show that: "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Id*. As discussed above, the allegations of the complaint are insufficient to state constitutional violations. Consequently, the Court finds that Sgt. Reyes, Officer Marklund, and Principal Dudley are entitled to qualified immunity as to each of the claims alleged against them in their individual capacities.

## D. MUNICIPAL LIABILITY FOR FAILURE TO TRAIN AGAINST LAKE COUNTY SCHOOL DISTRICT

Next, the Court turns to Plaintiff's claim under § 1983 against the Lake County Florida School District for failure to train Principal Dudley of his duties as custodian of public records. Plaintiff devotes only two sentences to this claim and contends that "Plaintiff was unlawfully trespassed and unlawfully arrested for trespassing due to the but for cause of the documented unconstitutional policy po9150 of the LCSD Board Policies." (Doc. 1-1 at 9). In support of his claim, Plaintiff references *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658 (1978).

Under *Monell*, a government entity is subject to § 1983 liability "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell*, 436 U.S. at 694.

Under the *Monell* doctrine, however, "municipalities cannot be held liable for employees under *respondeat superior*." *Mercado v. City of Orlando*, 407 F.3d 1152, 1161 (11th Cir. 2005).

If a constitutional violation is established, then the courts must consider "whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *accord Patrick v. Floyd Med. Ctr.*, 201 F.3d 1313, 1315 (11th Cir. 2000). Specifically, in order to prevail under this claim, "a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the [municipality's] policy or custom caused the violation."[10] *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).

The second requirement, namely, that a custom, policy, or procedure exists, "prevents the imposition of liability based upon an isolated incident." *Id.* Indeed, courts have recognized that: "Where a plaintiff claims that a municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Bd. of County Comm'r v. Brown*, 520 U.S. 397, 405 (1997).

As an initial matter, Plaintiff's claim against the Lake County School District fails because Plaintiff has not established the first element, that his constitutional rights were violated. Likewise, Plaintiff has not established that the District had a custom or policy that constituted deliberate indifference to his constitutional right or that the policy or custom caused the violation. Although Plaintiff references policy po9150 of the LCSD Board Policies,

---

[10] A policy or custom is a persistent and wide-spread practice. *Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986).

he does not recite any facts that would suggest the policy constituted deliberate indifference to constitutional rights or that it caused a violation.

Simply alleging the elements necessary to state a claim against a governmental entity, without alleging facts to support those elements, is insufficient for purpose of surviving a motion to dismiss. *See, e.g.*, *Gray v. City of Roswell*, 486 Fed. App'x 798, 800–01 (11th Cir. 2012) (holding that while a municipality may be liable under § 1983 when official policy or custom causes a constitutional violation, a plaintiff cannot survive a motion to dismiss where she "does not recite any facts or policies that would support a claim against the City," but instead makes "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements") (quotation omitted).

Further, to the extent Plaintiff asserts a failure to train or supervise claim (*see, e.g.*, Doc. 1-1 at 9, ¶ 38), such a claim also fails on these allegations. "To establish 'deliberate indifference' or a 'deliberate or conscious choice,' a plaintiff must present some evidence that the [government] knew of a need to train and/or supervise in a particular area and the [government] made a deliberate choice not to take any action." *Gold v. City of Miami*, 151 F.3d 1346, 1350–51 (11th Cir. 1998). "Further, the Eleventh Circuit requires 'proof that the [governmental entity] was aware of a prior incident in which constitutional rights were similarly violated.'" *Lang v. City of Largo*, 2006 WL 889990, at *2 (M.D. Fla. Apr. 6, 2006) (quoting *Church v. Huntsville*, 30 F.3d 1332, 1342–46 (11th Cir. 1994)). Notably, it is not sufficient to merely allege that a particular officer may be unsatisfactorily trained or that an incident could have been avoided if an officer had better training. *City of Canton*, 489 U.S. at 390–91.

Here, Plaintiff has alleged nothing (other than conclusory assertions) to suggest that the Lake County School District was deliberately indifferent to his rights or the rights of others. Indeed, Plaintiff alleges in a conclusory manner that the Lake County School District failed to train and supervise Dudley on his duties as the custodian of public records, but he alleges no factual basis—other than this incident—to support this theory of liability. Facts must be alleged to support this theory of liability. *See Hall*, 170 Fed. App'x at 108 ("Because Hall alleged no factual support for his conclusory statement that the City had a policy or custom of grossly inadequate supervision and training of its employees, the district court did not err in dismissing Hall's claims against the City."); *cf. Rivas v. Figueroa,* 2012 WL 1378161 (S.D. Fla. Apr. 20, 2012) (finding that plaintiff had sufficiently alleged facts of a custom, policy, or practice to overcome the defendants motion to dismiss where plaintiff alleged, with detail, numerous instances of police officers using excessive force and receiving no disciplinary action).

Plaintiff has presented no factual matter, as he is required to do, that the Lake County School District knew of a need to train and deliberately chose not to take action; nor has Plaintiff provided evidence that the District was aware of a prior incident. Accordingly, and because Plaintiff has also not established a constitutional violation, Plaintiff's governmental liability claim against the Lake County School District is due to be dismissed in all respects.

### E.  FIRST AMENDMENT RETALIATION AGAINST ALL DEFENDANTS

Finally, the Court turns to Plaintiff's claim alleging retaliation in violation of the First Amendment. Plaintiff devotes a single sentence to this claim and alleges that he brings the claim against all defendants "because their rights violations were driven by the fact of me exercising my right to be Free Press, Right of Assembly, Redress of Government." (Doc. 1-1

at 9, ¶ 39).

This claim is also insufficient because the existence of probable cause also generally bars a First Amendment retaliatory arrest claim. *See Nieves v. Bartlett*, 204 L. Ed. 2d 1, 139 S. Ct. 1715, 1726 (2019). The exception to this rule is "when "a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Nieves*, 139 S. Ct. at 1727.

As has already been established above, probable cause existed for Plaintiff's arrest. Further, Plaintiff has not alleged that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech were not. Consequently, Plaintiff has failed to state a claim for retaliation in violation of the First Amendment.

### F.  MOTION FOR JUDICIAL NOTICE

As a final matter, and as mentioned above, the defendants have also filed a motion requesting that the Court take judicial notice of the record in related state court proceedings. Defendants recite that Plaintiff was charged by Information with one count of Trespassing Upon Grounds of a Public School Facility, in violation of Fla. Stat. § 810.097(1). The Information is attached to Defendants' motion as Exhibit 1. (Doc. 11-1).

Defendants further recite that Plaintiff entered a Pre-Trial Intervention Program, which resulted in a Pre-Trial Intervention Contract. The contract is attached to Defendants' motion as Exhibit 2. As a condition of the Pre-Trial Intervention Program, Plaintiff agreed to admit guilt to the underlying charge of Trespassing upon Grounds of a Public School Facility and agreed the admission could be used in court for future proceedings. (Doc. 11-2 at 2). The contract expressly states, "[t]he defendant does further admit guilt to the underlying charge(s), which can be used in court for future proceedings." (Doc. 11-2 at 2).

Federal Rule of Evidence 201(b) provides that a court "may judicially notice a fact that is not subject to reasonable dispute because it:"

> (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

In ruling on a motion to dismiss, the Court may consider matters of which the Court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Among such items are court records. *Griffin v. Verizon Comm'cns Inc.,* 746 F. App'x 873, 876 (11th Cir. 2018). The Court may consider those documents only to the extent that they speak for themselves and not for the truth of the matters asserted. *Mathieson v. Wells Fargo Bank, NA as Tr. for Pooling & Servicing Agreement Dated as of June 1, 2006 Securitized Asset Backed Receivables LLC Tr. 2006-FR2 Mortg. Pass-Through Certificates, Series 2006-FR2*, 524 F. Supp. 3d 1246, 1256 n.10 (M.D. Fla. 2021); *see Thomas v. Waste Pro USA, Inc.*, No. 8:17-cv-2254-CEH-CPT, 2019 WL 3835255, at *2 (M.D. Fla. Aug. 15, 2019) ("the court may take judicial notice of the documents filed in a proceeding, but not the facts contained in the documents.").

Here, Defendants request that the Court take judicial notice of "the attached records," meaning the Information and the Pretrial Intervention Contract, "for all proper and permissible uses in this matter and for such other and further relief as the Court deems just and proper." (Doc. 11). Defendants do not request that the Court take judicial notice of any particular underlying fact or statement in those records, nor do Defendants expressly argue that Plaintiff's false arrest claim is barred due to Plaintiff's admission of guilt to the trespassing charge. *See, e.g., Vickers v. Donahue*, 137 F. Appx 285, 290 (11th Cir. 2005) (holding that conviction barred a plaintiff's § 1983 claim, despite plaintiff's allegations, where the § 1983

claim directly contradicted that plaintiff was found guilty of the violation, convicted, and sentenced).

As explained above, Plaintiff's own allegations and the video footage provides ample support for a finding of both actual probable cause and arguable probable cause for his arrest. In other words, Defendants' motions to dismiss are due to be granted regardless of whether the Court takes judicial notice of the Information and Pretrial Intervention Contract, and Defendants have not made a specific argument relying on those documents. Consequently, the request for judicial notice (Doc. 11) is due to be denied as moot, but without prejudice to the right to refile the motion if necessary.

## IV. RECOMMENDATION

For the reasons stated above, and upon due consideration, it is respectfully RECOMMENDED that:

(1) Defendants' motion for judicial notice (Doc. 11) be denied as moot, but without prejudice to the right to refile the motion if necessary.

(2) The motions to dismiss filed by Sgt. Reyes, Officer Marklund, Principal Gregg Dudley, and the Lake County Florida School District (Docs. 12, 13 & 15) should be GRANTED in all respects.

**DONE** and **RECOMMENDED** in Ocala, Florida on March 23, 2023.

PHILIP R. LAMMENS
United States Magistrate Judge

c: Presiding District Judge & Courtroom Deputy
Counsel of Record
Unrepresented Party